398 A.2d 204

Diane Lynn STAUB, Appellee,

v.

SOUTHWEST BUTLER COUNTY SCHOOL DISTRICT, Appellant

and

Jose Saban, M.D., Appellant

and

Mario Ludmer, M.D. and North Hills Passavant Hospital, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 26, 1978.

Decided Feb. 15, 1979.

Reargument Denied April 3, 1979.

Petition for Allowance of Appeal Granted September 19, 1979.

414

John W. Jordan, IV, Pittsburgh, for appellant Jose Saban, M.D., at No. 500 and appellee at No. 513.

William C. Robinson, Butler, for appellant Southwest Butler County School Dist., at No. 513 and appellee at No. 500.

Peter J. Mansmann, Pittsburgh, for appellee Diane Staub at No. 513.

David H. Patterson, Pittsburgh, for appellee North Hills Passavant Hospital, at No. 513.

James A. Wood, Pittsburgh, for appellee Mario Ludmer, M.D., at No. 513.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

Does the Pennsylvania Health Care Services Malpractice Act[1] require a court of common pleas to surrender original jurisdiction of an action in trespass when the tortfeasor-defendant causes one or more health care providers to be

---

1. Act of October 15, 1975, P.L. 390, No. 111, § 101, 40 P.S. § 1301.101 et seq.

joined as additional defendants? The trial court answered this issue in the affirmative and directed a transfer of the case to the Administrator for Arbitration Panels for Health Care. We disagree and reverse.

The complaint alleged that Diane Lynn Staub had sustained brain damage when she fell from "still rings" during a physical education class at Seneca Valley High School. She commenced suit against Southwest Butler County School District, alleging negligence, inter alia, in failing to provide proper equipment, instruction and supervision during the class. The School District joined as additional defendants the North Hills Passavant Hospital, where Diane had been hospitalized following the fall, Dr. Jose Saban, a radiologist, and Dr. Mario Ludmer, the treating neurosurgeon. Defendant's complaint averred that the additional defendants had been negligent in the delivery of medical services to Diane after her fall. The additional defendants then filed preliminary objections asserting that original jurisdiction to hear malpractice claims against them had been vested in Arbitration Panels for Health Care by the Pennsylvania Health Care Services Malpractice Act.

The present appeals were filed by Southwest Butler County School District and Dr. Saban. The School District contends that the lower court erred in holding that it lacked jurisdiction to hear the case. Dr. Saban argues that the trial court lacked authority to transfer the action to an administrative agency and should have stricken the joinder of the health care providers. He suggests that plaintiff's action could then have proceeded in the court of common pleas against defendant alone.

We conclude that the Court of Common Pleas of Butler County has original jurisdiction to hear and decide this case in its entirety. Therefore, we need not consider whether a court has the inherent power to transfer an improperly filed medical malpractice action to an administrative tribunal.

The purpose of the Malpractice Act, as stated in Section 102 thereof, 40 P.S. § 1301.102, is, in part, "[T]o establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation." A compulsory arbitration system has been devised to reduce non-meritorious claims and to expedite the disposition of all medical malpractice claims. Section 309 of the Act, 40 P.S. § 1301.309, establishes that an arbitration panel "shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider." [2] Provision is made for an appeal to the court of common pleas in Section 509 of the Act, 40 P.S. § 1301.509. On appeal, the disappointed party has a right to a trial de novo.

In *Gillette v. Redinger*, 34 Pa.Cmwlth. 469, 383 A.2d 1295 (1978), the Administrator for Arbitration Panels had sustained the claimants' preliminary objections to the defendant-physician's complaint joining as an additional defendant the original tortfeasor. The joinder had been stricken because the administrator concluded that the tortfeasor was not a "health care provider." The Commonwealth Court affirmed, holding that the term "nonhealth care provider" referred to persons who, like manufacturers of drugs and medical instruments, although not health care providers, were kindred to health care providers. As such, the term "nonhealth care provider" did not refer to all persons not included in the definition of "health care provider." The Court concluded: "Our close examination of the Act . . leads to the inevitable conclusion that the legislature never

**2.** The compulsory arbitration provisions of the Health Care Services Malpractice Act are constitutional. *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978).

intended the Arbitration Panels for Health Care to pass upon questions other than that of medical malpractice. . . Were we to hold to the contrary, the Arbitration Panel would have jurisdiction over virtually every type of tort claim which contributes, however, remotely, to an injury which is also partly caused or aggravated by an act of malpractice. We may not assume that the legislature attempted to place so impossible a burden upon the Arbitration Panels in the absence of clear language in the Act indicating its intention to do so." *Gillette v. Redinger, supra,* 34 Pa.Cmwlth. 474–476, 383 A.2d at p. 1298.

This decision is helpful in resolving the reverse procedural issue presently before us. Section 309 of the Health Care Services Malpractice Act, 40 P.S. § 1301.309, has granted original exclusive jurisdiction to the arbitration panels when a claim is "brought by a patient or his representative for loss or damages resulting from the furnishing of medical services . . ." and when the claim is "asserted against a non-health care provider who is made a party defendant with a health care provider." In the instant case, plaintiff's complaint asserted no claim against a health care provider. Her claim was made solely against the School District, which was alleged to be an original tortfeasor and was not a health care provider. Original jurisdiction, therefore, did not lie in an arbitration panel but in the court of common pleas.

■ As a general rule, the liability of a tortfeasor includes any additional harm which may be caused by the negligence, mistake, or lack of skill of a hospital or physician employed to treat the injured person if the plaintiff exercised reasonable care in the selection of a physician or surgeon. *Thompson v. Fox,* 326 Pa. 209, 192 A. 107 (1937); *Wallace v. Pennsylvania Railroad Company,* 222 Pa. 556, 71 A. 1086 (1909); Restatement (Second) of Torts § 457 (1964). Therefore, if the School District were found liable for plaintiff's initial injury, plaintiff would be entitled to recover in her action against such defendant all resulting damages, including those caused by the negligent delivery of medical services following her initial injury. Having elected the

court of common pleas as the forum in which to assert this claim, she should not be denied her choice by a defendant who joins health care providers as additional defendants. There is nothing in the statute which expressly or by necessary implication suggests a legislative intent to allow an alleged tortfeasor to effect such a change of forum.

The defendant tortfeasor, of course, is entitled to seek contribution from health care providers to the extent that careless delivery of medical services increased plaintiff's loss. *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 390 A.2d 765 (1978). This right can be protected by joining the health care providers as additional defendants in plaintiff's action. Pa.R.C.P. No. 2252(a) expressly permits such joinder, and the Health Care Services Malpractice Act contains nothing, either expressly or by necessary implication, that would prohibit it. Therefore, we perceive no good reason for dissecting the trespass action and requiring that defendant's claim for contribution be presented separately to an arbitration panel.

The Health Care Services Malpractice Act was not intended to deprive common pleas courts of all jurisdiction to hear medical malpractice cases. It merely postponed the exercise of that jurisdiction. The Act was intended to provide an administrative system for prompt determination of patients' claims for damages caused by the negligent delivery of medical services. Neither claims against persons who are not health care providers nor claims by alleged tortfeasors for contribution from health care providers are within the scope of original exclusive jurisdiction conferred upon malpractice arbitration panels.

Defendant's complaint in the instant case avers also that one or more of the additional defendants is solely liable on the cause of action sued upon by plaintiff. Although it seems clear that the health care providers cannot be liable for plaintiff's fall, it is conceivable that the defendant school district may be found free of liability and one or more of the medical service providers responsible for malpractice. A

verdict against a health care provider alone, of course, would result in a determination of a malpractice claim without prior submission to an arbitration panel. Nevertheless, in the absence of a contrary legislative intent, economy of time and personnel dictates that all issues be resolved in one action.

Pa.R.C.P. No. 2252(a) does not bar the joinder of these health care providers on the grounds that one or more of them is solely liable to plaintiff. This procedural rule permits the joinder as additional defendants of any persons who "may be alone liable . . . on the cause of action declared upon." The words "on the cause of action declared upon" must be broadly construed to mean "damages or injuries." Thus, so long as the alleged liability of the additional defendants is related to the original claim which plaintiff has asserted against the original defendant, a third party complaint averring sole liability for some or all of plaintiff's damages is within bounds. *Incollingo v. Ewing*, 444 Pa. 263, 290, 282 A.2d 206, 221 (1971). This broad interpretation of the rule "avoids multiplicity of suits and reduces the time of litigation, the expense of litigation, the hazard of loss of evidence due to the lapse of time, and the possibility of inconsistent findings." Goodrich-Amram 2d § 2252(a):6.

For these reasons, the Court of Common Pleas of Butler County has original jurisdiction to hear this case in its entirety, and it was error to transfer the same to the Administrator for Arbitration Panels for Health Care.

The order of the court below is reversed, and the case is remanded for proceedings consistent with the foregoing opinion.

CERCONE, President Judge, concurs in the result.

HOFFMAN, J., files a concurring opinion.

HOFFMAN, Judge, concurring:

Plaintiff has sued a nonhealth care provider, the Southwest Butler County School District (District) for injuries she

sustained in an accident in her gymnastics class at high school, claiming negligence in the provision of improper and inadequate equipment, instruction, and supervision. The District has joined as additional defendants several health care providers, alleging that their medical malpractice upon the plaintiff after her accident was the sole or partial cause of her injuries.

The court below transferred the entire lawsuit to the Office of the Administrator for Arbitration Panels for Health Care. We now know that the arbitration panels have no jurisdiction over nonhealth care providers such as the District, *Gillette v. Redinger*, 34 Pa.Cmwlth. 469, 383 A.2d 1295 (1978), since the scope of issues triable before the panel is limited to questions of medical malpractice. Therefore, I join the opinion of the majority insofar as it restores the plaintiff's claim against the District to the court of common pleas, where jurisdiction is proper.

However, I disagree that there is "no good reason for dissecting the trespass action and requiring that defendant's claim for contribution be presented separately to an arbitration panel." The entire thrust of the Health Care Services Malpractice Act [1] (Act) is that medical malpractice claims should always be tried in the first instance by an arbitration panel under the Act. The mandatory inclusion in each panel of two health care providers who are practicing members of their profession is obviously designed to instill a higher degree of medical expertise in the adjudication of medical malpractice suits. However, I feel I must reluctantly concur in the result reached by the majority, which returns this malpractice claim to the court of common pleas. By the plain language of the Act, the arbitration panel has jurisdiction to hear only those claims brought by a patient or his representative, 40 Pa.C.S.A. § 1301.309, and the District is neither. While I must respect this limitation on the panel's jurisdiction, I must nonetheless point out why this result is at odds with the apparent overall intent of the Act, and likely to defeat the stated purposes of the Act.

1. Act of October 15, 1975 P.L. 390, No. 111, § 101; 40 Pa.C.S.A. § 1301.101 et seq.

In order to hold down liability insurance premiums, and the resulting increase in the cost of health care, the Act requires each health care provider to carry basic insurance coverage, and then provides a catastrophe loss fund to pay all awards against health care providers in excess of this basic insurance coverage, up to one million dollars for each occurrence. The catastrophe loss fund is financed by a surcharge against all health care providers, thus spreading this risk among the largest possible group of insureds. However, the loss fund is available only when an award is made in an "action brought under this act . . . ." 40 Pa.C.S.A. § 1301.701(d). Thus, if there is a catastrophic loss and corresponding judgment entered in a court of common pleas against the additional defendants here, the fund will not be available. If the District pays a catastrophic loss, and seeks contribution, the health care providers will be devastated by a personal liability in excess of basic insurance coverage, and/or the District will be forced to bear a disproportionate burden of the judgment. If the District is unable to satisfy a judgment based on a catastrophic loss, then the plaintiff will be left with her injury and a partially unsatisfied and uncollectible judgment. What will happen generally because of exposure to this liability in common pleas court, is that (1) plaintiffs or original defendants seeking contribution will be shortchanged, or (2) (more likely) health care providers faced with this statutory loophole will demand greater insurance coverage, and premiums (and health care costs to the consumer) will logically increase to cover this new risk.

The absurdity of this situation is apparent in that if the plaintiff here had simply sued all these defendants originally, the arbitration panel would have had exclusive jurisdiction over the medical malpractice claim, since the claim would have been "brought by a patient."

The opportunities for abuse are manifest. If a plaintiff wants to avoid the arbitration panel (and she may have good reasons for doing so, *see Parker v. Children's Hospital*, 483 Pa. 106, 394 A.2d 932 (1978) (Larsen, J., dissenting)), then

plaintiff need only sue a nonhealth care provider as an original defendant, and allow him in turn to join the health care provider. Collusion will not be necessary. The plaintiff can simply serve a nonhealth care defendant with a complaint replete with allegations of medical malpractice, and may be assured that the named defendant, seeking exculpation or contribution, will join the health care provider as an additional defendant.[2] If not corrected by amendment, this statutory loophole could swallow up the Act entirely. It will be up to the Legislature to correct this situation by amending Section 309 of the Act to include malpractice claims brought by non-patients for contribution.

2. There is already one reported opinion from a common pleas court where this has happened. *Simko v. Bob Smith Ford*, 5 Pa.Dist. & C.Rep. 3d 538 (Allegheny C.P. 1978).