Sunbury Community Hospital and Dr. John Dattoli, Petitioners *v.* Charles Kuster et al., Respondents.

Argued November 15, 1979, before Judges Wilkinson, Jr., Blatt and MacPhail, sitting as a panel of three.

140

*Joseph P. Hafer,* with him *James K. Thomas,* of *Thomas & Thomas,* for petitioners.

*Richard A. Gray,* of *Mitchell & Mitchell,* with him *C. Edward S. Mitchell, Harry L. Wilcox, John R. Moore,* and *Terry W. Light* of *McClure & Light,* for respondent.

OPINION BY JUDGE MACPHAIL, January 30, 1980:

Sunbury Community Hospital and Dr. John Dattoli (Petitioners) appeal to this Court from a decision of the Administrator for Arbitration Panels for Health Care (Administrator) sustaining the preliminary objections of Charles Kuster, Robert F. Kuster, and Selingsgrove Lodge, Loyal Order of the Moose, No. 1173 (Respondents) to Petitioners' complaint against them and ordering the complaint dismissed. The sole issue before us is whether the Administrator erred in ruling that the Arbitration Panels for Health Care (Panels) were without jurisdiction to decide a claim against Respondents. We hold that the Administrator did not err and, accordingly, we affirm his order.

The facts of this case may be stated briefly. Herbert and Joann Riehl (Riehls) instituted this action against Petitioners pursuant to Section 101 *et seq.* of the Health Care Services Malpractice Act (Act), Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §1301.101 *et seq.*, seeking to recover damages for alleged negligent medical care provided to Herbert Riehl. Petitioners sought to join Respondents as additional defendants before the Panel. They alleged that Respondents were responsible for the injuries to Herbert Riehl necessitating his treatment by Petitioners and that Respondents were solely liable or liable over to Petitioners for any liability Petitioners might owe to the Riehls. Respondents filed preliminary objections before the Administrator asserting that they did not fall within the scope of nonhealth care providers subject to joinder before the Panels pursuant to the Act and that, therefore, they were not proper parties to the action. The Administrator agreed.

The same issue, on similar facts, was raised to this Court and decided adversely to Petitioners' position in *Gillette v. Redinger*, 34 Pa. Commonwealth Ct. 469, 383 A.2d 1295 (1978). On this appeal, Petitioners assert that the Court's decision in *Gillette* was in error or, in the alternative, that legal developments subsequent to the *Gillette* decision require that we overrule it. We disagree.

Petitioners argue first that to prohibit health care providers from bringing any and all additional defendants before the Panel will result in multiple causes of action which, in turn, will cause an inefficient use of time, energy, and money. The express purpose of the Act is to provide *prompt determination* of alleged *malpractice claims*. *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 114-15, 394 A.2d 932, 936 (1978); *Gillette* at 472, 383 A.2d at 1297; Section 102 of the Act, 40 P.S. §1301.102. There will be nothing prompt about the adjudication of medical mal-

practice claims if the Panel must deal with every conceivable tortious act which may have occurred to a plaintiff prior to the alleged negligent medical care. Furthermore, the Panels, which are made up of health care providers, attorneys, and lay persons, are designed to consider health care related claims, *not* the total body of tort law. The more additional defendants and the more nonhealth care related claims brought before the Panels, the more complex the proceedings will become, the longer they will take to conclude, and the larger the Panels' backlog will grow.[1] Finally, as Judge CRUMLISH, writing for this Court in *Gillette* at 475-76, 383 A.2d at 1298, said,

> The only issue before the panel is that of the alleged failure by the defendants to properly treat an existing injury. The question of how the injury was caused may, and probably would, be germane to that issue, and the person who allegedly caused the injury could properly be called to testify; but the question of that person's possible liability is irrelevant.

In the alternative, Petitioners argue that we should overrule our decision in *Gillette* because of the apportionment of damages rule adopted by the Superior Court in *Embrey v. Borough of West Mifflin,* 257 Pa. Superior Ct. 168, 390 A.2d 765 (1978). We have examined the *Embrey* decision carefully and can find no reason why it or Section 433A of the Restatement (Second) of Torts, also related to the apportionment of damages and also relied on by Petitioners, should

---

[1] Approximately 2,775 cases have been filed with the Administrator's office since 1976, 2,300 since 1978 alone. In response to the backlog of cases developing before the Panels, the State Legislature enacted and the Governor signed the Act of December 14, 1979 (Act 128), P.L. , 40 P.S. §1301.308. Among other things, Act 128 reduces the number of Panel members from seven to three and streamlines the Panel appointment process. *See* Christopher, *Reducing Plan for Arbitration : Clearing the Panels' Channels,* Pa. L.J., Dec. 17, 1979 at 1, col. 3-5.

cause us to overrule *Gillette.* Furthermore, subsequent to its decision in *Embrey,* the Superior Court has followed reasoning similar to this Court's reasoning in *Gillette* in deciding a similar case. In *Staub v. Southwest Butler County School District,* Pa. Superior Ct. , , 398 A.2d 204, 207 (1979), the Court said,

The Health Care Services Malpractice Act was not intended to deprive common pleas courts of all jurisdiction to hear medical malpractice cases. It merely postponed the exercise of that jurisdiction. The Act was intended to provide an administrative system for prompt determination of patients' claims for damages caused by the *negligent delivery of medical services.* Neither claims against persons who are not health care providers nor claims by alleged tortfeasors for contribution from health care providers are within the scope of original exclusive jurisdiction conferred upon malpractice arbitration panels. (Emphasis added.)

In conclusion, we hold that Respondents are neither health care providers nor so intimately connected to health care providers[2] that they may be added as additional defendants in these proceedings before the Panel. The administrator did not err in sustaining their preliminary objections and in dismissing the complaint against them. The Administrator's order is affirmed.

### ORDER

AND Now, this 30th day of January, 1980, the order of the Administrator for Arbitration Panels for Health Care entered November 14, 1978 at M78-0239

---

[2] Examples of nonhealth care providers who may be subject to the Panels' jurisdiction include manufacturers of drugs or medical instruments. *See Morrison v. Therm-O-Rite Products Corp.,* 468 F. Supp. 1295 (M.D. Pa. 1979).

sustaining the preliminary objections of Respondents Charles Kuster et al. and dismissing the complaint of Petitioners Sunbury Community Hospital and Dr. John Dattoli against Respondents is affirmed.

Judge DiSalle did not participate in the decision in this case.